Case 4:13-cv-00078-A Document 10 Filed 04/03/13 Page 1 of 14 PageID 67

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

APR - 3 2013

CLERK, U.S. DISTRICT COURT
By_____
        Deputy

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| VS. | § | NO. 4:13-CV-078-A |
| | § | (NO. 4:11-CR-151-A-1) |
| CRYSTAL LaVON MASON-HOBBS | § | |
| | § | |

MEMORANDUM OPINION
and
ORDER

Came on to be considered the motion of Crystal LaVon Mason-Hobbs ("movant") pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct sentence. Having reviewed the motion, movant's memorandum, the record, the government's response, and applicable legal authorities, the court concludes that none of the grounds has merit and the motion should be denied.

I.

Background

Movant pleaded guilty to one count of conspiracy to defraud the United States, in violation of 18 U.S.C. § 371. She received a three-level reduction for acceptance of responsibility, a two-level enhancement for running a tax return preparation business and deriving a substantial portion of her income from such business, a two-level enhancement for using sophisticated means, and a four-level enhancement for being a leader or organizer of a

fraudulent scheme involving five or more participants or being otherwise extensive. The total offense level equaled 29, and with a criminal history category of I, the guideline range was 87-108 months; however, the statutory maximum was 60 months. Movant was sentenced to 60 months imprisonment and a three-year term of supervised release, and was also ordered to make full restitution in the amount of $4,206,805.49. The court entered judgment on March 19, 2012, and movant did not appeal. Movant timely filed her section 2255 motion on January 31, 2013.

From around 2005-2009, movant was an owner and operator along with her husband, Sanford Hobbs ("Sanford"), of a tax preparation business where she, Sanford, and their employees prepared and filed approximately 788 fraudulent tax returns through unauthorized use of the IRS electronic transmitter identification numbers (EFINs), resulting in a $4,200,000.00 loss to the United States Treasury. Movant and her husband obtained EFINs, and when the EFINs were suspended because of movant and Sanford's fraudulent activity, they got Sanford's sister, Nishia Hobbs ("Nishia") to obtain an EFIN, and they continued their criminal activity. The business had at least five employees: Regina Murray, Nikita Busby, Angela Lee, Angela McGrady, and Rockale Gowans.

As part of the scheme, movant prepared fictitious Schedule C forms to obtain a greater refund, fabricating information such as self-employment wages, exemptions, and credits. She also took advantage of return anticipation loans ("RALs") being offered by banks. Once the RALs were approved, the banks deducted tax preparation fees from the RAL funds and deposited the fees into movant's account. The loan funds were given to the clients in debit card form, and movant accompanied the clients to the ATMs and demanded excess fees from the clients. Movant and her husband retained all of the profits from the excess fees.

II.

Grounds of the Motion

Movant identified three grounds for relief in her motion, all asserting that her attorney was deficient during the sentencing process: (1) failure to object to a sentencing enhancement applied to movant for using sophisticated means to commit the offense; (2) failure to object to the enhancement applied to movant for her leadership role in the conspiracy; and (3) failure to request a downward variance. Memo. at 4-8.

III.

<u>Analysis</u>

A.   <u>Legal Standard for 28 U.S.C. § 2255</u>

After conviction and exhaustion, or waiver, of any right to appeal, courts are entitled to presume that a defendant stands fairly and finally convicted. <u>United States v. Frady</u>, 456 U.S. 152, 164 (1982); <u>United States v. Shaid</u>, 937 F.2d 228, 231-32 (5th Cir. 1991), <u>cert. denied</u>, 502 U.S. 1076 (1992). A defendant can challenge her conviction or sentence after it is presumed final on issues of constitutional or jurisdictional magnitude only, and may not raise an issue for the first time on collateral review without showing both "cause" for her procedural default and "actual prejudice" resulting from the errors. <u>Shaid</u>, 937 F.2d at 232.

Section 2255 does not offer recourse to all who suffer trial errors. It is reserved for transgressions of constitutional rights and other narrow injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice. <u>United States v. Capua</u>, 656 F.2d 1033, 1037 (5th Cir. Unit A Sept. 1981). In other words, a writ of habeas corpus will not be allowed to do service for an appeal. <u>Davis v. United States</u>, 417 U.S. 333, 345 (1974). Further, if issues "are raised and considered on direct appeal, a defendant

is thereafter precluded from urging the same issues in a later collateral attack." Moore v. United States, 598 F.2d 439, 441 (5th Cir. 1979) (citing Buckelew v. United States, 575 F.2d 515, 517-18 (5th Cir. 1978)).

B. Ineffective Assistance of Counsel Claims

To prevail on an ineffective assistance of counsel claim, movant must show (1) that her counsel's performance fell below an objective standard of reasonableness and (2) that there is a reasonable probability that, but for her counsel's unprofessional errors, the result of the proceedings would have been different. Strickland v. Washington, 466 U.S. 668, 687 (1984). Both prongs of the Strickland test must be met to demonstrate ineffective assistance. Id. at 697. Further, "[a] court need not address both components of an ineffective assistance of counsel claim if the movant makes an insufficient showing on one." United States v. Stewart, 207 F.3d 750, 751 (5th Cir. 2000). "The likelihood of a different result must be substantial, not just conceivable," Harrington v. Richter, 131 S. Ct. 770, 792 (2011), and a movant must prove that counsel's errors "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Cullen v. Pinholster, 131 S. Ct. 1388, 1403 (2011) (quoting Strickland, 466 U.S. at 686)). Judicial scrutiny of this type of claim must be

5

highly deferential and the defendant must overcome a strong presumption that his counsel's conduct falls within the wide range of reasonable professional assistance. <u>Strickland</u>, 466 U.S. at 689.

C. <u>None of Movant's Grounds Has Merit</u>

    1. <u>Failure to Object to Sophisticated Means Enhancement</u>

Movant contends that her conduct did not involve the use of sophisticated means, and that her attorney should have objected to the application of the sophisticated means enhancement. The Application Notes to the United States Sentencing Guidelines ("USSG") Manual provide:

> 3. "[S]ophisticated means" means especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense. Conduct such as hiding assets or transactions, or both, through the use of fictitious entities, corporate shells, or offshore financial accounts ordinarily indicates sophisticated means.
>
> <u>Background</u>: An increased offense level is specified for those in the business of preparing or assisting in the preparation of tax returns and those who make a business of promoting tax fraud because their misconduct poses a greater risk of revenue loss and is more clearly willful.

U.S. Sentencing Guidelines Manual § 2T1.4 cmt. n.3, background. The government points out that the Fifth Circuit has affirmed the application of sophisticated means enhancements in cases in which a defendant made a one-time purchase of an ethanol plant to

6

defraud the government out of federal excise taxes, United States v. Powell, 124 F.3d 655, 666 (5th Cir. 1997), and in which a defendant's "use of multiple cashier's checks and his wife's separate bank account to obscure" his conduct justified the application, United States v. Clements, 73 F.3d 1330, 1340 (5th Cir. 1996). See also United States v. Toto-Ngosso, 407 F. App'x 687, 691-92 (4th Cir. 2011) (affirming application of enhancement based on defendant's use of an EFIN registered to another entity to file clients' returns, use of bank accounts held in others' names to deposit fees, and failure to report the income made as a tax preparer).

Movant's scheme in defrauding the government was as equally, if not more, sophisticated as the above-mentioned examples. Movant, with Sanford, owned and operated a tax preparation business that had three offices and at least five employees. Movant filed 788 fraudulent tax returns from tax years 2005-08 that caused a loss of $4,200,000.00, used EFINs registered to others, set up bank accounts to take advantage of RALs and have fees deposited into her accounts, and extracted excessive fees from clients. Movant argues that her conduct was "relatively simple" because it involved repetitive conduct over a period of time and was "merely typical" in a scheme to file false tax returns. The court disagrees, and concludes that movant's

7

conduct involved sophisticated means, the application of the enhancement was appropriate, and movant's counsel was not deficient for failing to raise what would have been a meritless objection.[1] See Smith v. Puckett, 907 F.2d 581, 585 n.6 (5th Cir. 1990) ("Counsel is not deficient for, and prejudice does not issue from, failure to raise a legally meritless claim.").

2. Leadership Enhancment

Movant contends that she should not have been considered a leader or organizer of the criminal scheme under USSG § 3B1.1(a), and faults her attorney for failing to object to the application of the four-point enhancement applied for her leadership role. USSG § 3B1.1 calls for the court to increase a defendant's offense level by four points if "the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." Courts consider the following factors in determining whether a defendant qualifies as a leader:

> (1) exercise of decision-making authority; (2) nature of participation in the commission of the offense; (3) recruitment of accomplices; (4) claimed right to a larger share of the fruits of the crime; (5) degree of participation in planning or organizing; (6) nature and

---

[1] The court notes that, even if movant's proposed objection had merit, she cannot show prejudice, as without the enhancement, the guideline range would have been 70-87 months and the statutory maximum would have remained at 60 months. Movant can show no likelihood that the court would have imposed a sentence of imprisonment below 60 months.

8

scope of the illegal activity; and (7) degree of
control or authority exercised over others.

<u>United States v. Fullwood</u>, 342 F.3d 409, 415 (5th Cir. 2003) (citing USSG § 3B1.1, cmt. n.4). Applying the above factors to movant's case, it is clear that the four-point leadership enhancement was properly applied to movant. As an owner and operator of the business involved in the scheme, movant had considerable decision-making authority, recruited and supervised others to participate, personally directed and was involved in preparing and filing the fraudulent documents and in other activities such as setting up accounts. She and Sanford extracted excessive fees from clients, and retained all profits generated by these fees. The overall scheme involved hundreds of fraudulent tax returns over at least four years, and caused a $4,200,000.00 loss to the government. There is no question movant was a leader and organizer.

The next question is whether the criminal activity involved five or more "participants or was otherwise extensive." The guidelines provide that a "participant" is "a person who is criminally responsible for the commission of the offense, but need not have been convicted," and "[a] person who is not criminally responsible for the commission of the offense (<u>e.g.</u> an undercover law enforcement officer) is not a participant." USSG

9

§ 3B1.1 cmt. n.1. Movant argues that there were no specific findings made that her employees were knowing participants in the offense conduct, and therefore, the employees were not criminally responsible and she should not have received the enhancement. The government contends that movant's scheme "involved at a minimum eight participants," including movant, Sanford, five employees named in the presentence report, and Nishia. Resp. at 14.

The record reflects that employees were responsible for creating client files, entering tax return data, and accompanying clients to banks to extract excess fees, among other tasks. When movant and Sanford's EFINs were suspended by the IRS, Nishia obtained an EFIN that movant used to file tax returns. These activities by movant and others are sufficient to establish that the operation involved five or more participants, and movant offers nothing to show that Nishia and the five employees were not involved in the scheme. See United States v. Dadi, 235 F.3d 945, 952 (5th Cir. 2000) (affirming application of enhancement when defendant argued that the court did not find that each of the participants was criminally responsible); United States v. Caldwell, 448 F.3d 287, 293 (5th Cir. 2006) (determining that a list of five individuals named as straw purchasers of firearms for defendant could be sufficient for application of enhancement

10

under § 3B1.1(a)). Thus, the record shows that there was more than enough evidence to find that movant was the organizer or leader of criminal activity involving five or more participants.

Further, movant's scheme qualifies as "otherwise extensive." Application Note 3 to § 3B1.1 provides:

> In assessing whether an organization is "otherwise extensive," all persons involved during the course of the entire offense are to be considered. Thus, a fraud that involved only three participants but used the unknowing services of many outsiders could be considered extensive.

Movant's scheme was exactly such an organization, involving not only Sanford, Nishia, and her employees, but also affecting hundreds of taxpayers and multiple banks in defrauding the United States government. Movant's operation had three different offices, used numerous bank accounts, used at least three different EFINs, and went on for at least four years. It is clear that movant's scheme was "otherwise extensive," and that the enhancement was properly applied. Thus, failure by her attorney to object does not constitute ineffective assistance of counsel.[2]

---

[2] Just as in movant's first ground, movant cannot show that even if an objection were successful, she was prejudiced. Movant argues that a two- or three-level leadership enhancement would have been more appropriate, which would have placed her in a guideline range of 70-87 months and 78-97 months respectively, still above the statutory maximum 60 months to which she was sentenced.

11

3. <u>Downward Variance</u>

Movant faults her attorney for failing to request a downward variance to the 60-month sentence she received. After the Supreme Court decision in <u>United States v. Booker</u>, 543 U.S. 220 (2005), the sentencing guidelines became advisory and courts may now consider the factors listed in 18 U.S.C. § 3553(a) to impose a sentence outside the guideline range. <u>United States v. Mejia-Huerta</u>, 480 F.3d 713, 721 (5th Cir. 2007). Courts have three options when determining an appropriate sentence: (1) a sentence within the guideline range; (2) a sentence above or below the guideline range based on factors specified in the guidelines; or (3) a sentence outside the calculated guideline range that is not based on an allowed departure. <u>United States v. Rowan</u>, 530 F.3d 379, 381 (5th Cir. 2008). Movant argues that there were "various factors that warranted a sentence below the Guidelines range," including movant's "minimal" criminal history, that she has children to care for, that she has had to overcome a childhood with parents who were addicted to drugs, that she was put in charge of younger siblings at an early age, and that she would have been better able to make restitution payments if she were out of prison and able to work. Memo. at 11. Movant contends that counsel "should have argued these and other factors" in seeking a variance. <u>Id.</u>

12

The record reflects that the above factors were contained in the presentence report, and that movant's attorney addressed some of them at movant's sentencing hearing, specifically stating that movant had her own children, her brother's children, and one other child to take care of. The court considered counsel's statements and movant's own statements, and pointed out that movant could have actually received a much higher sentence were it not for the statutory cap. The court stated:

> In this case, were it not for the fact that she was charged with only one offense, and obviously she could have been charged with multiple offenses, her Guideline range would have been 87 to 108 months. So you have done an exceptionally good job on behalf of your client, Mr. St. John, for figuring out how to get the Government to charge her with only one offense. And by doing so you have capped her sentence at 60 months.
>
> It would require a sentence of at least 60 months to begin to adequately and appropriately address the factors the Court should consider under 18 United States Code § 3553(a). So I plan to impose a sentence of 60 months.

Sentencing Tr. at 5-6. Thus, it is clear that a motion for a downward variance would have had no impact on the sentence imposed by the court, and the court may have imposed a sentence above 60 months if not for the statutory maximum. Accordingly, movant's attorney was not ineffective for failing to move for a downward variance.

IV.

Order

Therefore,

The court ORDERS that the motion of Crystal LaVon Mason-Hobbs to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 be, and is hereby, denied.

Pursuant to Rule 22(b) of the Federal Rules of Appellate Procedure, Rule 11(a) of the Rules Governing Section 2255 Proceedings for the United States District Courts, and 28 U.S.C. § 2253(c)(2), for the reasons discussed herein, the court further ORDERS that a certificate of appealability be, and is hereby, denied, as movant has not made a substantial showing of the denial of a constitutional right.

SIGNED April 3, 2013.

JOHN McBRYDE
United States District Judge